UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 99.45.175.11,<br><br>    Defendant. | Case No. 23-cv-04339-RS<br><br>**ORDER GRANTING LEAVE TO ISSUE THIRD-PARTY SUBPOENA** |

## I. INTRODUCTION

Plaintiff Strike 3 Holdings, LLC ("Strike 3"), seeks a subpoena to unmask someone allegedly sharing its copyrighted pornographic films. Strike 3 has determined Defendant's Internet Protocol ("IP") address, but it cannot determine the account owner without a subpoena. An IP address may be shared widely, but it has only one account owner. As we noted in a previous order concerning the same Plaintiff, but repeat herein for the benefit of the Defendant who may receive this Order, many have raised concerns that Strike 3 is effectively extorting account owners through the many lawsuits it brings, because defendants are embarrassed into settling—even if they are innocent. Nonetheless, the law provides Strike 3 the right to issue a subpoena. To ensure no prejudice to the possibly innocent account owner, courts routinely protect the identity of defendants in these cases until, at least, further discovery reveals some information about them and whether they are at all likely to be the perpetrator. Leave to issue the subpoena is granted with these protective measures in place. Defendant can proceed anonymously until that individual can assert a defense. Strike 3 must also fulfill its promise to propose confidentiality, and Defendant

must be informed of these measures.

## II. BACKGROUND[1]

Strike 3 is a successful producer of pornographic videos. Notwithstanding Plaintiff's copyright protections, its videos are often distributed illegally online using file-sharing protocols, such as BitTorrent. Using specialized software, Strike 3 identified the IP address of a BitTorrent user who distributed fifty-nine of its films without authorization.

Strike 3 filed suit against this unknown Defendant on August 24, 2023, but it cannot proceed without a subpoena to the Internet Service Provider ("ISP") associated with the IP address for the name of the account owner. Strike 3 has tried obtaining the identity in other ways and failed. However, it has determined that the IP address traces to somewhere in this district. ISPs routinely delete this information after a certain time. Thus, Strike 3 filed an *ex parte* application for leave to serve a third-party subpoena to the ISP before a Rule 26(f) conference, pursuant to Rule 45 of the Federal Rules of Civil Procedure. Strike 3 is mindful of the controversy surrounding its litigation practices and, to mitigate the risk of pressuring people into unjust settlements, it claims it has a policy of entering into confidentiality agreements and "not seek[ing] settlements unless initiated by a defendant." Dkt. 7, at 3.

## III. LEGAL STANDARD

A court may authorize early discovery before the Rule 26(f) conference for the parties' and witnesses' convenience and in the interests of justice. Fed. R. Civ. P. 26(d). Courts within the Ninth Circuit generally consider whether a plaintiff has shown "good cause" for early discovery. *See, e.g.*, *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275–77 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* at 276.

In evaluating whether a plaintiff establishes good cause to learn the identity of a Doe

---

[1] The factual background is based on the allegations in the Complaint, which are taken as true for the purposes of this motion. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

defendant through early discovery, courts examine whether the plaintiff: (1) identifies the Doe defendant with sufficient specificity that the court can determine if the defendant is a real person who can be sued in federal court; (2) recounts the steps taken to locate and identify the defendant; (3) demonstrates the action can withstand a motion to dismiss; and (4) shows the discovery is reasonably likely to lead to identifying information that will permit service of process. *See Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578–80 (N.D. Cal. 1999) (citations omitted). "[W]here the identity of alleged defendants [is not] known prior to the filing of a complaint[,] the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or the complaint would be dismissed on other grounds." *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (third alteration in original) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).

## IV. DISCUSSION

### A. Strike 3's Pattern of Litigation

Strike 3 has been labeled by some as a "copyright troll" that files extortive lawsuits. *Strike 3 Holdings, LLC v. Doe*, 351 F. Supp. 3d 160, 161 (D.D.C. 2018), *rev'd and remanded*, 964 F.3d 1203, 1205 (D.C. Cir. 2020). In its detractors' view, it profits from "the nexus of antiquated copyright laws, paralyzing social stigma, and unaffordable defense costs." *Ingenuity 13 LLC v. Doe*, No. 12-cv-8333, 2013 WL 1898633, at *1 (C.D. Cal. May. 6, 2013). They posit that the scheme works like this: Strike 3 identifies thousands of IP addresses per year that uploaded its copyrighted material. *Strike 3*, 351 F. Supp. 3d at 162 (summarizing many cases). It files thousands of lawsuits and attempts to subpoena the subscriber information. *See Strike 3 Holdings, LLC v. Doe*, No. 22-cv-5160, 2022 WL 5007963 (N.D. Cal. Oct. 4, 2022); *see also Strike 3 Holdings, LLC v. Doe*, No. 22-cv-5088, 2022 WL 4467684 (N.D. Cal. Sept. 27, 2022); *Strike 3 Holdings, LLC v. Doe*, No. 22-cv-4577, 2022 WL 4021841 (N.D. Cal. Sept. 2, 2022); *Strike 3 Holdings, LLC v. Doe,* No. 21-cv-6886, 2021 WL 4820249 (N.D. Cal. Sept. 30, 2021). When it succeeds, the subscriber learns he or she is being sued for uploading pornography. To save themselves embarrassment, the subscriber usually settles for just less than the cost of defending

the suit. Their alternative is to pay high legal fees for a specialist in copyright law and hope the court lets them proceed anonymously. When a defendant does put up any fight, the company usually drops the case. *See Strike 3*, 351 F. Supp. 3d at 162 ("These serial litigants drop cases at the first sign of resistance, preying on low-hanging fruit and staying one step ahead of any coordinated defense.").

### B. Strike 3 Is Entitled to the Requested Subpoena

It is equally understandable for Strike 3 to be upset that its copyrights are being infringed, and for others to feel that Strike 3 is abusing the legal system. Ultimately, caselaw makes clear it would be an abuse of discretion to deny Plaintiff leave for this subpoena. The Ninth Circuit has not ruled on a request for a subpoena by Strike 3, but it has endorsed the general scheme of limited discovery for copyright infringement. *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1036 (9th Cir. 2018). Strike 3 needs this third-party subpoena to ascertain Defendant's identity. *Wakefield*, 177 F.3d at 1163. Its request satisfies the *seescandy* factors. *See* 185 F.R.D. at 578.

Further, even if one wanted to distinguish this case from the general copyright scheme, controlling law prevents consideration of the natural avenues of doing so, for reasons the D.C. Circuit outlined in a case involving a Strike 3 subpoena: it would be an abuse of discretion to consider the nature of the material, the possibility the case will fail, or Strike 3's pattern of litigation. *Strike 3*, 964 F.3d at 1203. This leaves no way to distinguish this case from any other unknown-infringer case. First, pornography is entitled to copyright protections just like any other content. *Jartech, Inc. v. Clancy*, 666 F.2d 403, 405–06 (9th Cir. 1982). Second, *Cobbler Nevada* does not provide a basis to deny the subpoena at this stage. That case held that being the account holder of an infringing IP address does not even raise an inference of infringement, because many people might have access to one such address. *Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142, 1145 (9th Cir. 2018). In fact, the plaintiff in that case was allowed both a subpoena and a deposition of the subscriber to determine details about the usage of the IP address. *See id.* Third, at this stage, the truth of Strike 3's allegations must be assumed, and all reasonable inferences must be drawn in its favor. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).

This is true despite criticism of Strike 3 and its counsel. *Strike 3 Holdings, LLC v. Doe*, No. 17-cv-1731, 2020 WL 531996, at *5 (W.D. Wash. Feb. 3, 2020) (granting summary judgment against Strike 3 and noting the assertion that the Doe defendant was the subscriber was "entirely unsupported by the record"), *aff'd*, 849 F. App'x 183 (9th Cir. 2021); *id.* n.5. Thus, although Strike 3's pattern of litigation is appropriate for judicial notice, it cannot support a denial of the request. Fed. R. Evid. 201.

### C. Protective Measures

Even if leave must be granted, the question of protective measures remains. Rule 26(c) allows a court to grant a protective order if there is good cause. *McCoy v. Sw. Airlines Co., Inc.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002). Courts routinely impose conditions on the grant of these subpoenas, such as requiring the subscriber's name not be made public, and that court filings discussing the identity must be redacted and sealed, at least until further discovery can be taken. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 19-cv-160, 2019 WL 591459, at *3 (N.D. Cal. Feb. 13, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-4993, 2019 WL 468816, at *2 (N.D. Cal. Feb. 6, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-2637, 2019 WL 935390, at *2 (E.D. Cal. Feb. 26, 2019). Indeed, Strike 3 claims it welcomes protective measures. This policy, along with not proposing settlements and only pursuing large-scale offenders, ostensibly ensures justice is being done.

Strike 3's policies are not as reassuring as it thinks. Large-scale infringement may logically stem as often from one zealous user as from an IP address for a location with many users, in which Strike 3's case may be impossible. Not proposing settlement may suggest Strike 3 is supremely confident in its case. Finally, Defendant might not be aware that he or she may ask for anonymity.

To ensure Defendant is not unduly prejudiced, Plaintiff must attempt to ensure Defendant knows he or she can proceed anonymously at the earliest possible opportunity, as ordered below. The ISP must serve a copy of this order on Defendant, which would accomplish this purpose. Strike 3 is also ordered to certify it has proposed a confidentiality agreement with Defendant. This should pose no hardship given that Strike 3 claims it has a policy of entering into confidentiality

agreements anyway.

## V. CONCLUSION

1. Plaintiff has established that good cause exists to serve a third-party subpoena on AT&T Internet (the "ISP"). Its motion is therefore granted.

2. Plaintiff may serve the ISP with a Rule 45 subpoena commanding the ISP to provide Plaintiff with the true name and address of the Defendant to whom the ISP assigned an IP address as set forth in Exhibit A to the Complaint. Plaintiff shall attach a copy of this Order to any such subpoena.

3. Plaintiff may also serve a Rule 45 subpoena in the same manner as above on any service provider that is identified in response to a subpoena as a provider of Internet services to Defendant; the same requirements laid out for AT&T Internet in this Order will also apply to any follow-on orders pursuant hereto.

4. If the ISP qualifies as a "cable operator," as defined by 47 U.S.C. § 522(5),[2] then it shall comply with 47 U.S.C. § 551(c)(2)(B)[3] by sending a copy of this Order to Defendant.

5. Plaintiff shall also request the ISP forward a copy of this Order to the subscriber, regardless of whether the ISP qualifies as a cable operator. If the ISP declines, Plaintiff shall serve a copy of this Order on Defendant simultaneous to or before any other service or communication to Defendant. Plaintiff must file a copy of its request to the ISP on the docket. Alternatively to the other requirements in this paragraph, Plaintiff may file an affidavit that it attests the ISP has forwarded this order to Defendant before attempting to serve or communicate with Defendant.

6. Plaintiff may only use the information disclosed in response to a Rule 45 subpoena

---

[2] "[T]he term 'cable operator' means any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system." 47 U.S.C. § 522(5).

[3] "A cable operator may disclose such [personal identifying] information if the disclosure is . . . made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed[.]" 47 U.S.C. § 551(c)(2)(B).

served on the ISP for the purpose of protecting and enforcing Plaintiff's rights as set forth in its Complaint. Specifically, Plaintiff must not publicly disclose the information obtained based on this subpoena without leave of the Court—at least until the Doe defendant has had an opportunity to file a motion to proceed anonymously, or further discovery has been taken. All references to Defendant's identity must be redacted and filed under seal until further notice.

6. Plaintiff must first file an affidavit confirming it proposed confidentiality to Defendant, as it has represented it would. This filing must contain the relevant communications concerning any proposed agreement, e.g., copies of emails related to confidentiality, or descriptions of conversations with Defendant.

7. AT&T Internet, and/or any other ISP that receives a subpoena pursuant to this Order, must confer with Strike 3 and may not assess any charge in advance of providing the information requested in the subpoena. The ISP that receives a subpoena and elects to charge for the costs of production must provide a billing summary and cost reports that serve as a basis for such billing summary and any costs claimed by the ISP.

8. AT&T Internet, and/or any other ISP that receives a subpoena pursuant to this Order, must preserve any subpoenaed information pending the resolution of any timely filed motion to dismiss.

**IT IS SO ORDERED**.

Dated: September 22, 2023

_____
RICHARD SEEBORG
Chief United States District Judge

ORDER GRANTING LEAVE TO ISSUE SUBPOENA
CASE NO. 23-cv-04339-RS